MANCHESTER ENVIRONMENTAL COALITION ET AL. *v.*
PLANNING AND ZONING COMMISSION OF THE
TOWN OF MANCHESTER ET AL.

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE No. 312490
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed December 5, 1988

*Beck & Eldergill,* for the plaintiffs.

*William J. Shea,* assistant town attorney, for the named defendant.

*Updike, Kelly & Spellacy,* for the defendant Homart Development Company.

ARONSON, J. This action is an appeal from the decision of the planning and zoning commission of the town

of Manchester (commission) granting a permit to allow a partial use of wetlands for the purpose of receiving storm water and for the construction of an access road.

On October 7, 1985, Homart Development Company (Homart) submitted an application to the commission, which was acting as the Manchester inland wetlands commission pursuant to § 22a-39-11.7 of the inland wetlands and watercourses regulations of the department of environmental protection, together with a letter, dated October 10, 1975, from the department of environmental protection transferring jurisdiction from that department to the commission. Homart's application was for a permit to drain storm water onto a portion of the wetlands adjacent to the proposed site of the Buckland Hills Shopping Mall. The application also requested permission to build an access road across a portion of the wetlands.

The commission granted the permit on November 18, 1985, upon a finding of no significant impact to the environment. In making such a finding, the commission relied upon a report from an engineering and consulting firm retained by the applicant, written comments from the town engineer and the water and sewer department of the town of Manchester, and a final report from the town's director of planning. Although the plaintiffs were present at the commission meeting considering the application, they claim that they were not allowed to submit rebuttal evidence or to contest the evidence submitted to the commission.

The commission published notice of its decision on November 25, 1985. Thereafter, the plaintiffs appealed from the decision of the commission to this court. In their appeal, the plaintiffs claim that: (1) the permit was issued without substantial evidence to support a finding by the commission of no significant impact; and (2) the commission's regulations failed to provide for a pub-

lic hearing upon a finding of no significant impact, and therefore the proceedings were unfair.

The defendants claim that the plaintiffs have no standing to maintain this appeal.

I

### DECISION OF THE COMMISSION

It is appropriate to analyze the decision of the named defendant, acting as the Manchester inland wetlands commission, as that of an administrative agency under the Uniform Administrative Procedure Act. General Statutes §§ 4-166 through 4-189. See *Feinson* v. *Conservation Commission,* 180 Conn. 421, 424, 429 A.2d 910 (1980).

"Judicial review of administrative process is designed to assure that administrative agencies act on the evidence which is probative and reliable and act in a manner consistent with the requirements of fundamental fairness." Id., 429.

At issue here is the same issue raised in *Feinson.* That issue is whether there was substantial expert evidence to support the lay commission's finding of no significant impact. In Connecticut, a lay commission cannot decide issues that are beyond its own expertise of common experience, since only experts can address issues not within the knowledge of the commissioners. Id., 427–28; see *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 571, 538 A.2d 1039 (1988).

An examination of the record shows that the commission had before it a site plan showing that the only construction planned through the wetlands was a minor road crossing. A soil and erosion control plan outlined the measures to be taken to control sedimentation and surface water discharge into the wetlands. The United

States Conservation Service reviewed the soil and erosion plan for the commission. An inland wetlands report prepared by Fuss and O'Neill, the developing engineer, was also presented to the commission. That report described each wetland, identified its most important functions and then assessed the impact of the proposed uses on each wetland. The report concluded that the overall impact would not "significantly diminish the wetlands and watercourses natural capacities to support desirable biota, prevent flooding, control sedimentation, assimilate wastes and provide drainage and preservation of open space."

The review of the application materials and town regulations by the director of planning and his staff, provided a basis for the director's recommendation that the use of the wetlands, for the most part, would avoid disturbance of wetland areas.

The water and sewer department of the town of Manchester reviewed the developer's plan and gave its input to the commission on the limitations that it recommended should be included in any approval. The police and fire departments of the town of Manchester reviewed the plans and made recommendations to the commission. The Hartford County Soil and Water Conservation District, Inc., also reviewed the plans and made recommendations to the commission.

Section 5 of a wetlands classification and evaluation furnished to the Manchester planning department by EPS was also available to the commission. Although EPS is not identified, the director of planning, in receiving this report and giving it to the commission, clothed the report with an official recognition and sanction of EPS. Although the plaintiffs contend that the commission had no right to use this report, the accuracy and credibility of evidence received by an administrative agency is peculiarly within the province of the agency.

*Connecticut Natural Gas Corporation* v. *Public Utilities Control Authority,* 183 Conn. 128, 136, 439 A.2d 282 (1981).

It is apparent in this case that the commission relied not upon its own knowledge, but upon the expertise of the town engineer, the water and sewer department, the police and fire departments, and the town's director of planning. This, the commission had a right to do. Id., 137–38.

"In appraising the sufficiency of this record, the court must determine only whether there was substantial evidence which reasonably supported the administrative decision . . . ." *Feinson* v. *Conservation Commission,* supra, 425.

Where, as here, the record provides substantial evidence for the consideration of the commission, the court cannot substitute its judgment for that of the commission when it is acting within its prescribed legislative powers. *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* supra, 572–73; *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773, 535 A.2d 1297 (1988).

## II

### PUBLIC HEARING

The issue raised in the plaintiffs' second argument is whether the commission was required to hold a public hearing as part of its proceedings.

Section 6.2 of the inland wetlands and watercourses regulations of the town of Manchester makes no provision for a public hearing. According to § 6.2, if the agency finds, on the basis of the evidence before it, that a proposed use will have no significant impact, then a "permit shall be granted forthwith." Section 6.3 of the regulations provides, however, that "[i]f the Agency

finds that a proposed activity or use involves a regulated activity which *will* have a significant impact or major effect on the wetland, the Agency shall hold a public hearing . . . ." (Emphasis added.)

Under the present facts, pursuant to the Manchester inland wetlands regulations, no public hearing can be held where an initial determination is made by the commission that there will be no significant impact. The regulations require a public hearing only after an initial determination has been made by the commission that significant impact upon the wetlands will be made by the developer.

The plaintiffs argue that the inland wetlands regulations of the town of Manchester are in conflict with state law on the requirement to hold a public hearing.

Section 22a-39 of the General Statutes deals with the duties of the commissioner of environmental protection under chapter 440 of the General Statutes, entitled "Wetlands and Watercourses." General Statutes § 22a-39 (k) requires the commissioner to conduct a public hearing "no sooner than thirty days and not later than sixty days following the receipt by said commissioner of any inland wetlands application, provided whenever the commissioner determines that the regulated activity for which a permit is sought is not likely to have a significant impact on the wetland or watercourse, he may waive the requirement for public hearing . . . ." Section 22a-39 (k) further provides that the commissioner may hold a public hearing on an application upon petition signed by at least twenty-five persons requesting a hearing. The petition must be filed, pursuant to this section of the statute, within thirty days after public notice that the commissioner is waiving the requirement for a public hearing.[1]

---

[1] We note that the plaintiffs did not allege that they filed a petition signed by at least twenty-five persons seeking a public hearing pursuant to Gen-

The consideration before the court is whether the provision of § 22a-39 (k) must be incorporated by reference into the wetlands regulations so as to be binding on the commission.

The provisions of the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-28 through 22a-45, need not be incorporated into a local municipal enactment. *Aaron* v. *Conservation Commission,* 183 Conn. 532, 543, 441 A.2d 30 (1981). All that is required of the local body is not to enact regulations inconsistent with state law. Id.

As stated in *Aaron,* " '[e]very intendment is to be made in favor of the validity of the ordinance[s] and it is the duty of the court to sustain the ordinance[s] unless [their] invalidity is established beyond a reasonable doubt.' *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 553, 163 A.2d 548 (1960)." *Aaron* v. *Conservation Commission,* supra, 537.

Accordingly, the court must examine the regulations of the Manchester inland wetlands and watercourses commission to determine whether these regulations, in providing for a public hearing only in the event that the commission finds that the use or activity will have a significant impact on the wetland, are inconsistent with the public hearing provisions of § 22a-39 (k).

As has been previously stated, § 22a-39 (k) does not require a public hearing on an initial application since "whenever the commissioner determines that the regulated activity for which a permit is sought is not likely to have a significant impact on the wetland or watercourse, he may waive the requirement for public hearing . . . ."

eral Statutes § 22a-39 (k). Cf. *Dugan* v. *Milledge,* 196 Conn. 591, 595, 494 A.2d 1203 (1985); *Senior* v. *Hope,* 156 Conn. 92, 98, 239 A.2d 486 (1968).

In similar fashion, the Manchester inland wetlands and watercourses regulations do not require a public hearing provided the local commission makes a finding of no significant impact. The only variations between the local regulation and the state statute are the provision in the local regulation for publication of the decision in the local newspaper and the provision of the state statute requiring publication of the notice of intent to waive the public hearing requirement, with a right to petition for a hearing within thirty days after publication of that notice.

In comparing the provisions of the local regulations and § 22a-39 (k), this court notes that the local inland wetlands regulations were enacted in 1975, whereas § 22a-39 (k) was brought about by the enactment of Public Acts 1977, No. 77-397.

The test used in *Aaron* v. *Conservation Commission,* supra, to determine whether a conflict exists is whether the local ordinance permits that which the statute forbids, or prohibits that which the statute authorizes.

Under the scheme of dual relationship between the desire of the legislature to have local participation and, yet to maintain standards as set forth in state statutes; id., 541; this court finds that both the state commissioner and the local commission are obligated to hold a public hearing once a finding of significant impact has been made. Under this same scheme, however, no public hearing is mandatory in the event that either the state commissioner or the local commission finds that no significant impact exists.

If the legislature, knowing of the large bodies of regulations existing throughout the state, had intended to obligate all local commissions to follow the exact dictates of § 22a-39 (k), it could have specifically done so in the passage of Public Acts 1977, No. 77-397. See

id., 538–41. The legislature, however, made no such requirement.

Under the foregoing analysis, this court finds that there is no conflict between the Manchester inland wetlands regulations and § 22a-39 (k). "An agency which has the authority to enact regulations is vested with a large measure of discretion, and the burden of showing that the agency has acted improperly rests upon the one who asserts it." Id., 537. The plaintiffs have failed to sustain this burden beyond a reasonable doubt. Id. A commission's action should be sustained unless it has acted illegally or in abuse of its discretion. *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 92, 411 A.2d 42 (1987). The action of the commission as to this issue is therefore sustained.

## III

### STANDING

The plaintiffs bring this appeal as concerned citizens of the town of Manchester pursuant to General Statutes § 22a-19 (a).

An appeal from an administrative body exists only by statutory authority. *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities,* 202 Conn. 150, 154, 520 A.2d 186 (1987). If an appeal is authorized by statute, there must be strict compliance with it. Id.

Section 22a-19 (a) provides in part: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law . . . any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have

the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

It is to be noted that § 10 of the inland wetlands and watercourses regulations of the town of Manchester provides for an appeal by "[a]ny person aggrieved by any regulation, order, decision or action made by the Agency pursuant to these regulations . . . within 15 days after publication of such regulation, order, decision or action . . . as provided in the Inland Wetlands and Water Courses Act." This section is consistent with General Statutes § 22a-43 (a),[2] and not with § 22a-19 (a), upon which the plaintiffs base their claim of standing.

Section 22a-19 (a) deals with administrative proceedings under chapter 439 of the General Statutes, entitled "Environmental Protection Department and State Policy," whereas § 22a-43 (a) comes under appeals in chapter 440 of the General Statutes, entitled "Wetlands and Watercourses." Section 22a-19 (a) does not involve the classic requirement of being an aggrieved party.

---

[2] General Statutes (Rev. to 1985) § 22a-43 provides: "APPEALS. (a) Any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality may, within fifteen days after publication of such regulation, order, decision or action appeal to the superior court for the judicial district where the land affected is located, and if located in more than one judicial district, to said court in any such judicial district, except if such appeal is from a contested case, as defined in section 4-166, such appeal shall be in accordance with the provisions of section 4-183, except venue shall be in the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district. Such appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court. Notice of such appeal shall be served upon the inland wetlands agency. The appeal shall state the reasons upon which it is predicated and shall not stay proceedings on the regulation, order, decision or action, but the court may on application and after notice grant a restraining order. Such appeal shall have precedence in the order of trial."

Section 22a-19 (a) deals with conduct which has or may have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources. Section 22a-43 (a), however, deals only with persons who are aggrieved by a decision relating to inland wetlands and watercourses.

There is a clear distinction between the chapter in the General Statutes dealing with environmental protection department policy on the one hand, and inland wetlands and watercourses on the other hand. "[L]ocal inland wetland bodies are not little environmental protection agencies. Their environmental authority is limited to the wetland and watercourse area that is subject to their jurisdiction. They have no authority to regulate any activity that is situated outside their jurisdictional limits." *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250, 470 A.2d 1214 (1984).

"[A]n inland wetland agency is limited to considering only environmental matters which impact on inland wetlands." Id. Accordingly, the appropriate section to use in taking an appeal from the actions of the defendant commission would be § 22a-43, not § 22a-19.

Although in support of their claim of standing the plaintiffs have cited authority that is inapplicable to this case, the issue of their standing will, nevertheless, be considered.

"Standing is not a matter of constitutional law in Connecticut, but is rather a rule of judicial administration based upon the principle that the appropriate parties to litigate a dispute are those who are injured or about to be injured." *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 65, 441 A.2d 68 (1981). Although "standing" as defined in *Manchester Environmental Coalition* v. *Stockton,* supra, is predi-

cated on injury, this term does not implicate the similar concept of aggrievement. Id., 64 n.15.

This court has noted that § 22a-19 (a) does not involve the classic requirement of being an aggrieved party. Section 22a-19 (a) deals with conduct that has or may have the effect of unreasonably polluting, impairing or destroying natural resources. On the contrary, § 22a-43 (a) does not invoke the effect of the commission's decision on natural resources, but rather, limits the right to appeal to persons who are aggrieved by the decision of the commission. This implicates the concept of aggrievement, not standing.

Aggrievement requires the passing of a twofold test: "First, the party claiming aggrievement must demonstate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific, personal and legal interest has been specially and injuriously affected by the decision." *Hall* v. *Planning Commission,* 181 Conn. 442, 444, 435 A.2d 975 (1980); see *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 502, 503 A.2d 1161 (1986). The burden of establishing aggrievement is upon the plaintiffs. *Hall* v. *Planning Commission,* supra.

The claim of the plaintiffs to have standing really involves the question of whether the plaintiffs are aggrieved parties. From this standpoint, the allegations of the plaintiffs are that they are an unincorporated association, residents and taxpayers, whose goals are to protect and to preserve the environment of the town of Manchester. While these concerns and goals are commendable, they express the same concerns of the community as a whole. Under these circumstances, the

plaintiffs fail to establish that they are specially and injuriously affected by the decision of the commission.

For the foregoing reasons, the appeal is hereby denied.